UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAVID ALLEN HUBBELL,

        Plaintiff,

  vs            6:07-CV-109

O.W. HUBBELL & SONS, INC.,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAVID ALLEN HUBBELL,

        Plaintiff,

  vs            6:07-CV-355

O.W. HUBBELL & SONS, INC.; and
HUBBELL HOLDING CORPORATION,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:            OF COUNSEL:

DAVID ALLEN HUBBELL
Plaintiff, Pro Se
P.O. Box 171
Ft. Walton Beach, FL 32549

HODGSON RUSS LLP         RICHARD L. WEISZ, ESQ.
Attorneys for Defendants
Suite 301
677 Broadway
Albany, NY 12207

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

The plaintiff has commenced the above actions for patent infringement (07-CV-109) and copyright infringement (07-CV-355). A non-jury trial was held on August 13 and 14, 2008, in Utica, New York. The plaintiff, David Allen Hubbell ("David Hubbell") did not testify.

Proposed Findings of Fact and Conclusions of Law were submitted by the parties after having been provided with transcripts of the trial.

Upon all submissions, including the trial transcript and after hearing the testimony and review of the exhibits, the following are the Findings of Fact and Conclusions of Law.

## I. FINDINGS OF FACT

### A. GENERAL

1. In 1999, plaintiff David Hubbell formed Structures of Ironwood, LLC ("Ironwood") with his brother, Daniel Merritt Hubbell ("Daniel Hubbell"), President of defendants, and a French company, Les Bois de Tertu (August 14, 2008 Trial Transcript (hereinafter "A14T"), at Page 8, lines 7-10);

2. Les Bois De Tertu's member, Jacques De Maussion, gave Ironwood a license on its patent for an aesthetic barrier (guardrail) system consisting of timber and steel components with a breakaway feature (AI4T, Page 6, line 26; Page 8, line 14).

3. At that time, the French company provided the timber components while the steel components were furnished by Di Highway Sign and Structure Company ("Di"),(AI4T, Page 9, lines 5-9);

4. Di was owned by Jane Mulvihill (AJ4T, Page 9), a sister of the brothers (AI4T, Page 5, lines 21-23; See also, August 13,2008 Trial Transcript (hereinafter "A13T") at Page 68, lines 5-19).

5.  In 2001, the interests of Les Bois De Tertu in Ironwood were bought out by the brothers, plaintiff David Hubbell and Daniel Hubbell (A14T, Page 9, lines 15-23).

6.  F. Christopher Hubbell ("Christopher Hubbell"), a cousin of the brothers, became the General Manager of Ironwood in 1999 (A14T, Page 7, line 25; Page 8, line 6).

7.  Christopher Hubbell was retained as General Manager of Ironwood (A14T, Page 10, lines 7-8) to market, promote, sell, manage inventory, and provide other responsibilities (AI4T, Page 10, lines 16-20).

8.  Christopher Hubbell has been the General Manager of Ironwood from 1999 to the present (AI4T, Page 6, lines 22-25).  He also was Vice-President of Cable Guide Railing Construction Company ("Cable Guide") until about September of 2006 when he left (A13T, Page 17, lines 19-21).

9.  A new Membership Agreement for Ironwood was signed by the brothers, plaintiff David Hubbell and Daniel Hubbell effective November 13, 2001 (AI3T, Page 24, lines 23-26); See also, Plaintiff's Trial Exhibit "33" in the Patent Case (Defendants' Trial Exhibit "DCB" in the Copyright Case).

10.  The new Membership Agreement for Ironwood at Paragraph 5.2(e) required both brothers as members of Ironwood to agree and consent to any modifications, changes, or shape in the guardrail (AI4T, Page 31, line 21 through Page 32, line 9).

11.  Also, incidental to the new Membership Agreement for Ironwood, the brothers plaintiff David Hubbell and Daniel Hubbell agreed to set up two (2) divisions of Ironwood with plaintiff David Hubbell handling the southern part of the United States and Daniel Hubbell handling the northern part of the United States (A14T, Page 12, line 15 through Page 16, line 8).

12. Defendant O.W. Hubbell & Sons, Inc., defendant Hubbell Holding Corp., Cable Guide, and Ironwood are all registered with the New York State Secretary of State as independent and separate companies and are active companies (See Plaintiff's Trial Exhibits "114", "115", "116" and "117" in the Patent Case).

13. Defendant O.W. Hubbell & Sons, Inc., is owned by defendant Hubbell Holding Corp. (AI3T, Page 28, lines 23-24).

14. Cable Guide is owned by defendant O.W. Hubbell & Sons, Inc. (A13T, Page 28, lines 18-21).

15. Ironwood filed its own federal return under its own Employer Identification Number for at least 2002-2007 (See, Plaintiff's Trial Exhibits "64" through "69" in the Copyright Case).

16. Plaintiff David Hubbell gave his brother Daniel Hubbell oral consent to use all Ironwood related intellectual property, including the design patent and the copyright at issue in this case, at the Baltimore, Maryland Trade Show in September or October of 2005, first at the Starbuck's in the Convention Center, and then the next day across the street at a restaurant (A14T, Page 123, line 8 through Page 124, line 22; Page 125, line 17 through Page 126, line 6).

17. The e-mail in evidence as plaintiff's Trial Exhibit "104" (Defendants' Trial Exhibit "12") is written confirmation of the verbal agreement (AI4T, Page 132, lines 4-9; Page 134, Lines 8-23).

18. There was no evidence at trial that plaintiff David Hubbell did not give the above consent.

19. Plaintiff David Hubbell was present at the trial but chose not to testify (A14T, Page 16, lines 8-13).

20. Christopher Hubbell operated Ironwood and used the square patent drawings, the splice, the copyright, and the patent without objection from plaintiff David Hubbell, and believed that Ironwood had the right to do so (AI4T, Page 59, lines 4-20).

### B. PATENT INFRINGEMENT CLAIM

21. Christopher Hubbell would do what was necessary to fulfill orders from Ironwood through Cable Guide, whether or not the orders originated for plaintiff David Hubbell in the southern part of the United States or Daniel Hubbell in the northern part of the United States (AI4T, Page 19, lines 6-17).

22. The original Ironwood barriers installed prior to 2003 utilized a round or circular rail piece (AI4T, Page II, lines 10-19).

23. Ironwood originally sold a round rail product. It developed the square rail product at issue in this litigation in response to certain demands using the original drawings of the round rail and the seven (7) original drawings prepared for Ironwood in 1999 to establish the external dimensions for the square rail (AI4T, Page 20, lines 4-23).

24. The first customer request for a square rail product was in 2002 and 2003 when Christopher Hubbell advised Nathan Jacobson, an architectural firm, that Ironwood did not make a square rail but that it probably could (A14T, Page 25, lines 3-19).

25. The brothers, plaintiff David Hubbell and Daniel Hubbell, agreed to make the square rail product for Ironwood, but not for either one of them individually (A14T, Page 32, lines 9-21; A14T, Page 119, line 25 through Page 120, Line 3; AI4T, Page 134, lines 3-25).

26. It is this square rail product with the beveled edge that plaintiff David Hubbell

applied for in July 2004, and obtained a design patent in his name (AI4T, Page 20, lines 24-26). (U.S. Design Patent D 529, 200) ("200").

27. At the time the design patent 200 was applied for in July of 2004, there was no general discussion regarding whose name would be on the patent (AI4T, Page 21, lines 7-10; Page 22, lines 9-12).

28. Plaintiff David Hubbell's design patent 200 is on the square rail product which was developed to meet a marketing need for Ironwood to compete with other square rail designs (A14T, Page 22, lines 12-20).

29. A sample of the square rail product with the beveled edge was given to the Nathan Jacobson architectural firm in late 2004 by Christopher Hubbell (AI4T, Page 26, line 4 through Page 27, line 4).

30. Plaintiff David Hubbell had seen the sample square rail product prior to Christopher Hubbell delivering it to the Nathan Jacobson architectural firm, but did not make any claim to design patent 200 rights (AI4T, Page 27, lines 13-20).

31. Samples of both the round and the square rail with beveled edges under design patent 200 had been displayed at the Ironwood booth at the Baltimore, Maryland Trade Show in September or October 2005, without objection from plaintiff David Hubbell (A13T, Page 92, line 12 through Page 93, line 2; See also, plaintiff's Trial Exhibit "39" in the Patent Case). This was also the time of the consent from plaintiff David Hubbell to his brother Daniel Hubbell. (See ¶ 16 and 17).

32. The first shipment of Ironwood rails with a square design product under design patent 200 was in November or December 2005 (A13T, Page 58, lines 12-18). This was for the Quinnipiac job (A13T, Page 40, lines 20-26; Page 41, lines 6-18).

33. Plaintiff David Hubbell knew that all sales of the square rail product under design patent 200 for the so-called Ironwood north operations of Daniel Hubbell were conducted through Cable Guide (A14T, Page 33, line 16 through Page 34, line 9).

34. Defendants had approval to make and sell the square rail product under design patent 200 through Cable Guide based upon plaintiff David Hubbell's verbal consent (AI4T, Page 130, line 18 through Page 131, line 6; See also, A14T, Page 134, line 6 through Page 135, line 17).

35. Plaintiff David Hubbell suffered no economic loss by the use of the square rail product under design patent 200 by the defendants Ironwood and Cable Guide.

### C. COPYRIGHT INFRINGEMENT CLAIM

36. Ironwood had a website prior to 2006 which listed both brothers, plaintiff David Hubbell and Daniel Hubbell, as contacts (AI4T. Page 15, lines 2-16).

37. Christopher Hubbell set up the website for Ironwood (AI4T, Page 17. lines 3-7).

38. The website at issue in this case was established by Quadsimia. LLC ("Quadsimia"). Until Quadsimia got involved in marketing the website in 2006, Thorgier Jonsson provided website assistance (A14T, Page 14. lines 17-26).

39. Quadsimia identified Ironwood and its client and owner of the website (A14T, Page 77, lines 23-26; Page 78, line 2).

40. The copyrighted materials by plaintiff David Hubbell were on the website owned, operated, and monitored by Ironwood, known as structures of ironwood.com (AI4T, Page 40, lines 7-16).

41. Plaintiff David Hubbell never asked Christopher Hubbell to remove the copyrighted materials from the structures of ironwood.com website (AI4T, Page 40, line 25 through Page 41, line 9; AI4T, Page 54, line 25; Page 51, line 3).

42. Plaintiff David Hubbell agreed to the release of a CD containing all of the copyrighted materials in February 2006 to Suyan Casino in California (A14T, Page 41, line 18 through Page 42, line 24; See also, Plaintiffs Trial Exhibit "10" in the Copyright Case).

43. There was an agreement between the brothers, plaintiff David Hubbell and Daniel Hubbell, that allowed Ironwood to use all the copyrighted materials (AI4T, Page 54, lines 18-24) (See also, AI4T, Page 59, lines 4-16).  (See also ¶ 16 and 17).

44. Quadsimia removed the copyrighted materials from the website when asked to do so by representatives of the defendants in October 2007 (AI4T, Page 71, lines 3-21).

45. The website in question belonged to Ironwood and plaintiff David Hubbell consented to its use of the copyrighted materials.

46. Plaintiff David Hubbell suffered no economic loss by the inclusion of the copyrighted materials in certain drawings on the Ironwood website.

## II. CONCLUSIONS OF LAW

1. Pursuant to the terms of the Membership Agreement, the intellectual property at issue in these actions belongs to Ironwood.

2. Ironwood had the right to use all of the intellectual property at issue in these actions, and plaintiff David Hubbell did not testify or offer evidence to the contrary.

3. In addition, plaintiff David Hubbell's consent to use the intellectual property at issue in these actions was given to Ironwood.

    4.  Plaintiff David Hubbell agreed to allow his brother, Daniel Hubbell's northern operation to use the intellectual property at issue in these actions.  This was done through Cable Guide.

    5.  The defendants did not infringe upon plaintiff David Hubbell's interest in the intellectual property at issue in these actions.

    6.  The plaintiff David Hubbell is not entitled to damages and/or injunctive relief.

    7.  The defendants are not entitled to affirmative relief in these actions.

Therefore, it is

ORDERED, that the complaints in each action are DISMISSED.

The Clerk is directed to enter judgments accordingly and close the files.

IT IS SO ORDERED.

Dated: June   10 , 2009
       Utica, New York.

                                             United States District Judge